1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9        FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11  CAMILO OREJUELA GUTIERREZ,                No. 1:25-cv-01515-DAD-AC (HC)

12              Petitioner,

13      v.                                    ORDER GRANTING IN PART AND
                                              DENYING IN PART PETITIONER'S *EX*
14  CHRISTOPHER CHESNUT, et al.,              *PARTE* APPLICATION FOR A TEMPORARY
                                              RESTRAINING ORDER
15              Respondents.
                                              (Doc. No. 9)
16

17

18          This matter is before the court on petitioner Orejuela Gutierrez's *ex parte* motion for a

19  temporary restraining order. (Doc. No. 9.) For the reasons explained below, the court will grant

20  in part and deny in part petitioner's motion.

21                              **BACKGROUND**

22          On November 7, 2025, petitioner filed a petition for writ of *habeas corpus* pursuant to 28

23  U.S.C. § 2241 challenging his detention by the U.S. Department of Homeland Security ("DHS").

24  (Doc. No. 1.) In his petition, he asserts four claims for relief: (1) improper denial of a custody

25  redetermination hearing in violation of 8 U.S.C. §§ 1225, 1226 of the Immigration and

26  Nationality Act ("INA"); (2) prolonged detention in violation of the Due Process Clause of the

27  Fifth Amendment; (3) inadequate bond proceedings and deprivation of procedural due process in

28  violation of the Fifth Amendment and the Administrative Procedure Act ("APA"); and (4)

                                      1

1    conditions of civil confinement amounting to cruel and unusual punishment depriving him of

2    substantive due process in violation of the Fifth Amendment.  (*Id.* at ¶¶ 118–136.)  On November

3    17, 2025, petitioner filed a motion seeking the issuance of a temporary restraining order.  (Doc.

4    No. 9.)  In that motion, petitioner seeks relief from this court in the form of:  (1) his immediate

5    release from custody; or (2) in the alternative, an order directing an immigration judge ("IJ") to

6    hold a bond hearing at which the government would bear the burden to prove by clear and

7    convincing evidence that petitioner's ongoing detention is justified based upon a finding that he

8    presents a risk of danger or flight risk; and (3) a declaration that petitioner's detention violates

9    immigration law and the Due Process Clause of the Fifth Amendment.  (Doc. No. 9-1 at 2.)  In his

10   pending motion and petition, petitioner provides the following recitation of facts.

11       On March 2, 2024, petitioner entered the United States through the U.S.-Mexico border

12   when he was arrested and interviewed by Immigration and Customs Enforcement ("ICE") at

13   Imperial Beach Station.  (Doc. No. 2 at ¶¶ 2, 5, 19, 27.)[1]  To date, petitioner has been detained for

14   approximately 20 months.  (*Id.* at ¶ 2.)[2]  On June 27, 2024, petitioner appeared *pro se* before an IJ

15   seeking release on bond.  (*Id.* at ¶ 32.)  The IJ ultimately denied his request for bond after

16   concluding that petitioner had failed to establish that he was neither a flight risk nor a danger to

17   the community.  (*Id.*)  On November 13, 2024, petitioner had a bond redetermination hearing, this

18   time with representation.  (*Id.* at ¶ 34.)  At that hearing, counsel for DHS argued that the IJ lacked

19   jurisdiction to hold a bond proceeding as to petitioner, and petitioner withdrew his bond request

20   without prejudice.  (*Id.*)  A third bond hearing was held on December 2, 2024, where the IJ

21   concluded that she had jurisdiction to hold bond proceedings in petitioner's case but denied him

22

23   [1]  Petitioner states that he was apprehended and interviewed by CBP both on March 2, 2024 (*Id.*
     at ¶¶ 27, 58) and March 3, 2024.  (*Id.* at ¶ 19.)  However, it appears that March 2, 2024 is the
24   correct date since there is no further mention of any events taking place on March 3, 2024 in his
     motion.
25

26   [2]  Before appearing at a July 10, 2024 master calendar hearing, petitioner applied for asylum.
     (*Id.*)  On May 13, 2025, an IJ issued an order denying petitioner's application for asylum and
27   ordering his removal to Columbia, but granting him deferral of that removal under the
     Convention Against Torture.  (*Id.* at ¶¶ 31, 268.)  DHS appealed this decision, with that appeal
28   remaining pending before the Board of Immigration Appeals ("BIA").  (*Id.* at ¶ 31.)

1    bond upon a finding that petitioner presented a flight risk.  (*Id.* at ¶ 35.)  Petitioner appealed the

2    IJ's decision denying him release on bond, and on June 27, 2025, the BIA remanded the case

3    back to the IJ with instructions to determine "whether [petitioner] has established a material

4    change in circumstances" to support the holding of a new bond hearing and, further, whether

5    petitioner had established such a material change with respect to his danger to the community if

6    released.  (*Id.* at ¶ 38.)

7         On July 2, 2025, the IJ issued an order pursuant to the BIA remand concluding that

8    petitioner had failed to establish changed circumstances sufficient to warrant a new bond hearing

9    and could not establish that he posed neither a danger to the community nor a flight risk if

10   released.  (*Id.* at ¶ 39.)  This order was issued without further briefing from the parties or the

11   holding of another hearing.  (*Id.*)  In that same order, the IJ also noted the BIA decision in *Matter*

12   *of Q. Li*, that was issued after petitioner's December 2024 hearing, divested her of jurisdiction

13   over petitioner's custody redetermination request.  (Doc. No. 2-2 at 299 n.6) ("The Form I-213,

14   Record of Deportable/Inadmissible Alien, see Exh. 4, reflects in this case that Respondent was

15   placed in removal proceedings after being initially detained at or near the southern border

16   pursuant to a warrantless arrest while [petitioner] was arriving to the United States.  As such, the

17   Court presently lacks jurisdiction over his request for custody redetermination and would deny his

18   request for custody redetermination on this additional, independent basis.").  Petitioner's appeal

19   of this decision remains pending before the BIA.  (*Id.* at ¶ 40.)[3]

20        On August 28, 2025—approximately 18 months into his detention and without prior

21   notice to his attorneys—petitioner was transferred from the Golden State Annex facility in

22   Bakersfield, California to the California City Detention Facility ("CCDF").  (*Id.* at ¶ 42.)  Prior to

23   his transfer, petitioner had surgery to repair torn ligaments in his knee.  (*Id.* at ¶ 42, 43.)  The only

24   follow-up medical treatment that he has purportedly received following that surgery are

25   painkillers and an X-ray after he fell in his flooded cell.  (*Id.* at ¶ 42.)  Because petitioner has not

26   received any follow-up medical care for his surgically repaired knee, it has become "swollen,

27   _____

28   [3] On September 11, 2025, the IJ issued the same July 2, 2025 order with a new date and time stamp.  (*Id.* at ¶ 41.)  Petitioner appealed that decision to the BIA as well.  (*Id.*)

yellow/purple in color, and feels hot to the touch." (Doc. No. 2-2 at 320.) CCDF does not have possession of or access to petitioner's medical records despite medical staff at that institution emphasizing how crucial it is for petitioner to receive follow up care. (*Id.*)

On November 17, 2025, petitioner filed the pending motion for a temporary restraining order seeking: (1) his immediate release from detention; or (2) in the alternative, remand to the IJ with instructions to hold a bond hearing at which the government must prove by clear and convincing evidence that his ongoing detention is justified based on a finding of danger and risk of flight; and (3) a declaration from the court that petitioner's detention violates immigration law and the Due Process Clause of the Fifth Amendment. (Doc. No. 9-1 at 2.) On November 18, 2025, the court directed petitioner's counsel to serve respondents with a copy of the motion for temporary restraining order and accompanying papers, and also set a briefing schedule as to the pending motion. (Doc. No. 10.) On November 25, 2025, respondents filed a timely opposition. (Doc. No. 16.) Petitioner filed a reply on December 1, 2025. (Doc. No. 18.)

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. For Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were

raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**DISCUSSION**

**A.    Likelihood of Success on the Merits[4]**

"The first factor 'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)); *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Petitioner bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. For Wild Rockies*, 632 F.3d at 1131. As outlined above, petitioner has raised several statutory and constitutional challenges to his on-going detention, including the alleged violation of §§ 1225 and 1226 of the INA, violation of procedural due process, violation of the APA, violation of substantive due process, and violation of the Due Process Clause of the Fifth Amendment.

1.    Violation of the INA

In his first claim, petitioner asserts that the IJ incorrectly concluded that she lacked jurisdiction to hold a custody redetermination hearing in petitioner's case in violation of 8 U.S.C. §§ 1225 and 1226. (Doc. No. 2 at ¶¶ 118–120.) Petitioner insists that he is detained under § 1226(a) because: (1) the government did not contest the IJ's jurisdiction at his first bond proceeding; (2) the fact that an incomplete Form I-860 was issued indicates that proceedings

---

[4]  Respondents argue that petitioner should be required to exhaust his administrative remedies before he seeks release under 28 U.S.C. § 2241. (Doc. No. 16 at 34.) Because the court ultimately denies petitioner's request for his immediate release, the court need not consider respondents' arguments in this regard.

1  related to the credible fear determination were not completed; and (3) the Form I-862 Notice to

2  Appear indicates that petitioner never received a credible fear interview.  (Doc. No. 9 at 21–22.)

3  Together, petitioner contends that these facts demonstrate that he was never placed in expedited

4  removal proceedings and that in turn establishes he was detained pursuant to § 1226(a).  (*Id.* at

5  22.)  In opposition, the government contends that petitioner is subject to mandatory detention

6  under § 1225(b) because he is an "applicant for admission" due to his presence in the United

7  States without having previously been admitted or paroled.  (Doc. No. 16 at 21–22.)  The

8  government argues that treating petitioner under § 1225 is appropriate because he "falls within

9  the scope of the recent 2025 designation that expands enforcement to the full scope of the

10  statute."  (*Id.* at 22.)

11      The distinction between immigration detention carried out pursuant to § 1225 and § 1226

12  has been addressed recently by a number of district courts within the Ninth Circuit.  *See e.g.*, *Alva*

13  *v. Noem*, No. 1:25-cv-01600-DJC-CSK, 2025 WL 3281211, at *2 (E.D. Cal. Nov. 25, 2025);

14  *Beltran v. Noem*, No. 25-cv-02650-LL-DEB, 2025 WL 3078837, at *4–5, (S.D. Cal. Nov. 4,

15  2025); *Rico-Tapia v. Smith*, — F. Supp. 3d —, 2025 WL 2950089, at *4–6 (D. Haw. Oct. 10,

16  2025).  As one district court recently explained:

17      Noncitizens are detained during removal proceedings under two
statutes: 8 U.S.C. §§ 1225 and 1226.  Section 1225 is titled
18      "Inspection by immigration officers; expedited removal of
inadmissible arriving aliens; referral for hearing" and concerns
19      "applicants for admission" who are defined for purposes of § 1225
as an "alien present in the United States who has not been admitted
20      or who arrives in the United States." § 1225(a)(1). An applicant for
admission "seeking admission or readmission to or transit through
21      the United States" is inspected by immigration officers.
§ 1225(a)(3). After inspection, certain applicants for admission who
22      are deemed to be inadmissible shall be subject to expedited
removal—"without further hearing or review"—unless they indicate
23      an intention to apply for asylum or a fear of persecution, in which
case they will be referred for a credible fear interview by an asylum
24      officer.  § 1225(b)(1)(A)(i)-(ii); *see also Dep't of Homeland Sec. v.
Thuraissigiam*, 591 U.S. 103, 109 (2020).  For the other applicants
25      for admission, "if the examining immigration officer determines that
an alien seeking admission is not clearly and beyond a doubt entitled
26      to be admitted, the alien shall be detained" for a proceeding under
the regular removal process of § 1229a.  § 1225(b)(2)(A).  Applicants
27      for admission detained under either prong of § 1225(b) are subject to
mandatory detention until removal proceedings have concluded, but
28      may be paroled into the United States by DHS "for urgent

6

humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also Jennings*, 583 U.S. at 300, 302 (finding that parole is the only statutory provision for release from detention under § 1225(b) during removal proceedings). There is no statutory right to a bond hearing for noncitizens detained under § 1225(b). *See Jennings*, 583 U.S. at 296–97.

Section 1226 is titled "Apprehension and detention of aliens" and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." § 1226(a). The government may then "continue to detain the arrested alien" or release the alien on bond or conditional parole. § 1226(a)(1)-(2). After the initial decision is made to either detain or release the noncitizen, the noncitizen may request a bond hearing (i.e., custody redetermination) before an immigration judge. § C.F.R. § 1236.1(d)(1). However, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. Section 1226(c) specifies that noncitizens who are inadmissible or deportable because of certain crimes are ineligible to be released on bond or parole, unless it is deemed necessary for witness-protection purposes. §§ 1226(a), (c).

*Beltran*, 2025 WL 3078837, at *4. Numerous district courts have held that § 1226, rather than § 1225, applies to individuals who were physically present in the United States for some period of time before they were detained by ICE. *See e.g.*, *Garcia v. Noem*, No. 5:25-cv-02771-ODW-PD, 2025 WL 2986672, at *4 (C.D. Cal. Oct. 22, 2025) ("First, the statutory text does not support Respondents' contention that § 1225 governs where, as here, an alien is present in the United States without admission."); *see also Lara v. Noem*, No. 5:25-cv-03072-ODW-JC, 2025 WL 3255001, at *3–4 (C.D. Cal. Nov. 19, 2025).

Immigration detainees subject to § 1226(a) are afforded special protections regarding their custody status that are not afforded to those who are subject to mandatory detention under § 1225:

Under § 1226(a), DHS may detain a noncitizen during her removal proceedings, release her on bond, or release her on conditional parole. Immigration officers can release a noncitizen if she demonstrates that she "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). A noncitizen can request a custody redetermination (i.e., a bond hearing) by an immigration judge at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At a custody redetermination, the immigration judge has broad discretion to continue detention or release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1); *In re Guerra*, 24 I&N Dec. 37, 39–

7

1    40 (BIA 2006) (listing nine factors for immigration judges to
2    consider).

3    *Hernandez Nieves v. Kaiser*, No. 25-cv-06921-LB, 2025 WL 2533110, at *3 (N.D. Cal. Sept. 3,

4    2025).

5          Petitioner argues that the failure of immigration officials to provide him various required

6    procedures indicates that he was not detained and placed in "expedited removal" proceedings

7    pursuant to 8 U.S.C. § 1225(a). (Doc. No. 9 at 21–22.) Petitioner's argument in this regard is

8    misplaced because respondents argue that petitioner is detained under § 1225(b)(2), rather than

9    § 1225(b)(1). *J.S.H.M v. Wofford*, No. 1:25-cv-01309 JLT SKO, 2025 WL 2938808, at *5 (E.D.

10   Cal. Oct. 16, 2025) ("[N]oncitizens subject to 1225(b)(2) are not eligible for expedited removal

11   but are subject to mandatory detention while their full removal proceedings are pending. This is

12   in contrast to the default detention regime under § 1226(a), which allows for discretionary release

13   and review of detention through a bond hearing."). Respondents argue that petitioner is instead

14   detained as an "applicant for admission" pursuant to 8 U.S.C. § 1225(b). (Doc. No. 16 at 21–22.)

15   Accordingly, the court will consider below whether petitioner has been detained pursuant to 8

16   U.S.C. § 1225(b) or § 1226(a).

17         As described above, petitioner was provided with multiple custody redetermination

18   hearings at which he was denied bond based on a finding that he posed a flight risk or a danger to

19   the community if released. Such proceedings are conducted when an individual is detained under

20   § 1226(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (describing how

21   under § 1226(a) the government may "continue to detain the arrested alien, or may release the

22   alien on (A) bond of at least $1,500 . . . or (B) conditional parole" and the alien may be "released

23   if he demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to

24   property or persons, and that the alien is likely to appear for any future proceeding.") (alteration

25   in original) (internal quotation marks omitted); *see also J.S.H.M*, 2025 WL 2938808, at *3.

26   Moreover, the notice to appear that was issued to petitioner shortly after he was detained

27   designated him as "an alien present in the United States who has not been admitted or paroled."

28   (Doc. No. 2-2 at 53.) That petitioner was designated as "*present* in the United States" supports a

8

finding that petitioner has been detained under § 1226(a). *See E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *8 (D. Nev. Oct. 14, 2025) (finding the petitioner detained under § 1226(a) because his notice to appear categorized him as "an alien present in the United States who has not be admitted or paroled," there was no evidence that a subsequent notice to appear was issued, and there was no determination by ICE or DHS that petitioner was detained under § 1225); *Chang Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *3 (D. Me. Sept. 29, 2025) (finding the designation of petitioner by immigration officials as "present in the United States who has not been admitted or paroled" supported a finding that they were detained under § 1226(a)'s discretionary detention scheme); *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *7–8 (D. Colo. Oct. 22, 2025) (finding DHS's failure to designate petitioner as an "arriving alien" on the notice to appear form, while not dispositive, supported a finding that the petitioner was subject to § 1226. The court therefore concludes that petitioner in this case has previously been detained pursuant to § 1226(a).

As noted, the government contends that petitioner's detention is governed by § 1225 because he is an applicant for admission in light of the government's 2025 expansion of § 1225's reach. (Doc. No. 16 at 30–31.) In support of this contention, the government appears to argue that even if one was previously subject to proceedings conducted under § 1226, DHS is nevertheless entitled to clarify "the detention authority to conform to the requirements of the statutory framework as DHS now interprets it." (*Id.* at 31.) As numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later "switch[ing] tracks" to subject him to mandatory detention under § 1225(b)(2). *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025); *see also Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) (rejecting the government's argument that the petitioner was subject to mandatory detention under § 1225(b) where the petitioner was initially placed into regular removal proceedings under § 1229a and released them from custody pursuant to § 1226(a)); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025) (rejecting the government's argument that DHS can pursue mandatory detention "at any

1  time" and recognizing that the record reflected that the government has "consistently treated

2  Petitioner to the framework under § 1226(a)" and "that none of the documents from DHS

3  referenced § 1225(b)"); *Otero ex rel. Caicedo-Ruiz v. Kaiser*, No. 25-cv-06536-NC, 2025 WL

4  3301056, at *8 (N.D. Cal. Nov. 26, 2025) ("It follows that Caicedo-Ruiz was and is subjected to

5  § 1226(a), and not § 1225(b)(2), and therefore is protected by the Due Process rights created by

6  § 1226(a).  Additionally, because Caicedo-Ruiz can only be subjected to § 1226(a), it does not

7  matter whether the Government has the authority to detain Caicedo-Ruiz under § 1225(b)(2) in

8  the first place.").  Accordingly, the court concludes that petitioner is detained under § 1226(a).

9       As described above, a petitioner can request a custody redetermination hearing at any time

10  under § 1226(a).  *See* § 1003.19(e) ("After an initial bond redetermination, an alien's request for a

11  subsequent bond redetermination shall be made in writing and shall be considered only upon a

12  showing that the alien's circumstances have changed materially since the prior bond

13  redetermination.").  Neither the statutory nor regulatory framework require the government to

14  provide petitioner with another hearing after he is denied bond.  Ordinarily, the regulations

15  require individuals who are similarly situated to petitioner to submit a written request for a

16  custody redetermination hearing before the IJ.  Here, however, petitioner has instead been placed

17  in the position of now twice having been miscategorized as being detained under § 1225 by the IJ.

18  Accordingly, the court's finding that petitioner is detained pursuant to § 1226(a) leads the court to

19  conclude that petitioner must be permitted to file an application for a custody redetermination

20  hearing which the IJ must, by regulation, consider.

21       Petitioner has sufficiently demonstrated at this preliminary stage of these proceedings that

22  the IJ improperly concluded that she was divested of jurisdiction to review petitioner's custody

23  redetermination request based upon the legally erroneous finding that he was detained pursuant to

24  § 1225.  Accordingly, petitioner has shown that he is likely to succeed on the merits with respect

25  to his first claim that his detention violates §1226(a).[5]  The court need not address petitioner's

26

27  _____

[5]  Because the court finds that the record establishes that petitioner is detained under § 1226(a) for

28  the reasons explained above, it need not reach petitioner's alternative argument regarding the
government's failure to object to the IJ's jurisdiction to conduct a new bond hearing.

1  remaining claims at this time.  *All. For Wild Rockies*, 632 F.3d at 1139 (declining to address

2  remaining claims after finding the plaintiff established that there were serious questions going to

3  the merits with one claim).

4  **B.     Irreparable Harm**

5          As to the second *Winter* factor, the Ninth Circuit has recognized that "evidence of subpar

6  medical and psychiatric care in ICE detention facilities, the economic burdens imposed on

7  detainees and their families as a result of detention, and the collateral harms to children of

8  detainees whose parents are detained" are all indications of irreparable harm that justify the

9  granting of injunctive relief.  *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).  Here,

10  petitioner has submitted a declaration in which he states that, since his surgery in June 2025, he

11  has "not had any therapy or treatment" for his knee which has become "swollen, yellow/purple in

12  color, and feels hot to the touch."  (Doc. No. 2-2 at 320.)

13          Although petitioner has not supplemented his pending motion with any evidence to

14  establish his current medical condition, the court will nonetheless consider his declaration in

15  assessing his contention that the denial of the requested preliminary relief will subject him to

16  irreparable harm.  *Singh v. Barr*, No. 20-cv-02346-VKD, 2020 WL 1929366, at *10 (N.D. Cal.

17  Apr. 20, 2020) ("Respondents also correctly note that Mr. Singh has not presented any medical

18  evidence corroborating his claimed medical conditions, and Mr. Singh acknowledges that a

19  supplemental declaration submitted by his attorney contains hearsay.  Courts nonetheless have

20  credited hearsay where doing so serves the purpose of avoiding irreparable harm before trial.")

21  (footnote omitted) (internal citations omitted); *cf. Dignity Not Det. Coal. v. City of California

22  City*, No. 1:25-cv-01292-JLT-CDB, 2025 WL 3126698, at *4 (E.D. Cal. Nov. 7, 2025) ("The

23  Court has concerns about the evidentiary value of these media reports.  The rules of evidence are

24  relaxed in the context of a motion for emergency injunctive relief, so the Court may consider

25  hearsay evidence in relation to such motions, but the Court has discretion to weigh the evidence

26  as required to reflect its reliability . . . .") (internal citations omitted); *see also Ortuno v. Jennings*,

27  No. 20-cv-02064-MMC, 2020 WL 1701724, at *3 n.3 (N.D. Cal. Apr. 8, 2020).  Accordingly, the

28  court concludes that the second *Winter* factor weighs in favor of granting petitioner's motion.

1    **C.    Balance of Equities and Public Interest**

2         The final two *Winter* factors merge where, as here, the government is the opposing party.

3    *Nken v. Holder*, 556 U.S. 418, 435 (2009); see *also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037

4    (N.D. Cal. 2025).  As to the balance of equities factor, the government contends that it has "a

5    compelling interest in the steady enforcement of its immigration laws."  (Doc. No. 16 at 32.)  The

6    court is unpersuaded by this argument in the present context.  The government's interest is in

7    enforcement in accordance with the protections afforded to petitioner under federal law.

8    *Salvador v. Bondi*, No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *8 (C.D. Cal. Sept. 2,

9    2025) ("The Ninth Circuit has recognized that neither equity nor the public's interest are

10   furthered by allowing violations of federal law to continue.") (internal quotation marks omitted)

11   (citing *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)).  However, because the appropriate

12   remedy here is not an order requiring petitioner's  immediate release from custody, any burden

13   that the government will face is minimized.  *Giron Reyes v. Lyons*, No. 25-cv-04048-LTS-MAR,

14   2025 WL 2712427, at *6 (N.D. Iowa Sept. 23, 2025) ("[A]n injunction that simply compels the

15   Government to grant [petitioner] a bond hearing (while not compelling [his] release), is a limited

16   imposition on the Government's interests.").  In contrast, petitioner would suffer more severe

17   hardship absent the granting of injunctive relief since he has been denied the right to request a

18   custody redetermination hearing and to have that request considered on its merits.  Whether he

19   will prevail and be ordered released, or even receive another hearing based upon a finding that he

20   has demonstrated materially changed circumstances, is neither an issue before this court nor

21   necessary to answer in order to resolve the pending motion.

22        Finally, the public interest factor weighs in petitioner's favor since the alleged government

23   action at issue appears to have been undertaken in violation of federal law.  *W. Watersheds*

24   *Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1026 (D. Or. 2019) ("When the alleged action by the

25   government violates federal law, the public interest factor weighs in favor of the plaintiff."); *see*

26   *also Am. Fed'n of State Cty. & Mun. Emps., AFL-CIO v. U.S. Off. of Mgmt. & Budget*, No. 25-cv-

27   08302-SI, 2025 WL 3018250, at *23 (N.D. Cal. Oct. 28, 2025) ("[T]here is substantial public

28   /////

1    interest in having governmental agencies abide by the federal laws that govern their existence and

2    operations") (citation omitted).

3        Accordingly, the court concludes that the third and fourth *Winter* factors also weigh in

4    petitioner's favor.

5    **D.    Remedy**

6        As noted, petitioner seeks relief in the form of: (1) his immediate release from custody; or

7    (2) a new bond hearing before the IJ where the government would bear the burden of establishing

8    by clear and convincing evidence that petitioner presents a flight risk or danger to the community;

9    and (3) a declaration from this court that his detention violates the Due Process Clause of the

10   Fifth Amendment. (Doc. No. 9-1 at 2.)

11       "Injunctive relief should be no more burdensome to the defendant than necessary to

12   provide complete relief to the plaintiffs before the court." *E. Bay Sanctuary Covenant v. Biden*,

13   993 F.3d 640, 680 (9th Cir. 2021) (internal quotation marks and citation omitted). "A district

14   court has equitable discretion in determining the appropriate remedy as law and justice require for

15   unlawful detention in a habeas petition pursuant to § 2254." *E.C.*, 2025 WL 2916264, at *12.

16   Here, as noted above, petitioner has had multiple custody redetermination hearings at which

17   immigration judges have determined that he posed a flight risk or danger to the community if

18   released and that detention was justified as a result. The court declines to review those

19   immigration judge's findings on this limited record and on shortened time and therefore finds that

20   petitioner is not entitled to an order requiring his immediate release. Nevertheless, the court

21   concludes that, because petitioner is likely to succeed on the merits of his claim that he has been

22   denied the opportunity to seek a new redetermination hearing under § 1226(a), he is entitled to

23   apply for a new custody redetermination hearing in accordance with 8 C.F.R. § 1003.19(e) and to

24   have that request considered on its merits.

25                        **CONCLUSION**

26       For the reasons set forth above,

27   1.    Petitioner's motion for a temporary restraining order (Doc. No. 9), is GRANTED

28         in part as follows:

                            13

a.  An IJ shall provide petitioner with the opportunity to apply for a custody redetermination hearing in accordance with 8 U.S.C. § 1226(a) and 8 C.F.R. § 1003.19(e), and consider petitioner's application in that regard on its merits;

b.  Within seven (7) days of the IJ's decision regarding petitioner's request, the parties shall file a status report in this case confirming that a decision has been provided;

c.  Petitioner's request for a temporary restraining order ordering respondents to immediately release him is DENIED without prejudice; and

d.  Petitioner's request for a temporary restraining order declaring that his detention violates the Due Process Clause of the Fifth Amendment is DENIED without prejudice.

2.  Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure; and

3.  The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order.

IT IS SO ORDERED.

Dated:  **December 8, 2025**                     _____

DALE A. DROZD
UNITED STATES DISTRICT JUDGE